# 22-1678

## United States Court of Appeals for the Second Circuit

ANGEL DIAZ,

*Petitioner-Appellant*

v.

STACIE BENNETT,

*Respondent-Appellee*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR RESPONDENT

BARBARA D. UNDERWOOD
  *Solicitor General*
IRA M. FEINBERG
  *Deputy Solicitor General*
  *for Criminal Matters*
MICHELLE MAEROV
  *Senior Assistant Attorney General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Respondent
28 Liberty Street
New York, New York  10005
(212) 416-6242

Dated: November 25, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................iii

PRELIMINARY STATEMENT ........................................................ 1

ISSUES PRESENTED ...................................................................... 4

STATEMENT OF THE CASE ........................................................... 4

    A.    Petitioner's Murder Conviction ............................................... 4

    B.    Petitioner's New York State Habeas Petition .......................... 6

        1.    The State Trial Court Ruling Denying Petitioner's COVID-19 Claim on the Merits ......................................... 6

        2.    The Appellate Division's Affirmance ................................. 9

        3.    The Court of Appeals' Denial of Leave to Appeal ........... 10

    C.    The Present Habeas Petition ................................................. 11

        1.    District Court Proceedings ............................................... 11

        2.    Proceedings in this Court ................................................. 13

            a.    The Certificate of Appealability .............................. 13

            b.    Respondent's Motion to Dismiss .............................. 15

    D.    Petitioner's Recent Transfer ................................................. 16

SUMMARY OF ARGUMENT ........................................................ 17

A R G U M E N T ....................................................................................... 21

POINT I ................................................................................................ 21

THIS CASE IS MOOT ...................................................................... 21

POINT II .............................................................................................. 28

A PETITION SEEKING RELEASE FROM STATE PRISON
DUE TO CONDITIONS DURING THE COVID-19 PANDEMIC
DOES NOT PRESENT A HABEAS CLAIM COGNIZABLE
UNDER 28 U.S.C. § 2254 .................................................................. 28

   A.   Habeas Review Is Unavailable to Sentenced State
        Prisoners Seeking to Challenge Prison Conditions ............... 28

   B.   Permitting State Prisoners to Litigate Conditions of
        Confinement Claims via Habeas Petitions Would Be
        Inconsistent with Congressional Intent. ................................ 39

   C.   The Majority of Circuits Have Rejected Efforts of
        Sentenced State Prisoners to Challenge Prison
        Conditions Through Habeas Petitions .................................... 46

   D.   The Authority Cited by Petitioner Is Inapposite and
        Should Not Be Followed ........................................................... 51

      1.   The Cited Decisions Are Inapposite. ............................... 52

      2.   The Cited Decisions Should Not Be Followed ................. 56

      3.   Petitioner Has Not Pleaded a Cognizable Habeas
          Claim under the Cited Decisions ..................................... 60

      4.   The Contrary District Court Decisions in This
          Circuit Are Unpersuasive. ............................................... 62

CONCLUSION ..................................................................................... 64

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Abdul-Hakeem v. Koehler*,
910 F.2d 66 (2d Cir. 1990) ................................... 30

*Acevedo v. Capra*,
545 F. Supp. 3d 107 (S.D.N.Y. 2021) .......................... 13, 63

*Ahmed v. Otisville*,
No. 23-CV-454, 2023 WL 9113089 (S.D.N.Y. Dec. 13,
2023) ........................................................ 24

*Aigbekaen v. Warden*,
No. 3:21-CV-1672, 2022 WL 3347092 (D. Conn. Aug. 12,
2022) ..................................................... 24, 25

*Andrews v. Akinbayo*,
No. CV 21-886-CFC, 2022 WL 670942 (D. Del. Mar. 7,
2022) ........................................................ 60

*Ansari v. Tellez*,
No. 20-CV-2041, 2021 WL 2010399 (E.D.N.Y. Apr. 14,
2021) ........................................................ 24

*Bell v. Wolfish*,
441 U.S. 520 (1979) .......................................... 30

*Benjamin v. Jacobson*,
172 F.3d 144 (2d Cir. 1999) (en banc) ........................ 55

*Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics*,
403 U.S. 388 (1971) .......................................... 55

*Bowman v. Capra*,
No. 21-1822, 2023 WL 4339502 (2d Cir. July 5, 2023) .......... 14

iii

*Brooks v. Annucci,*
   No. 21-852, 2023 WL 4344581 (2d Cir. July 5, 2023) ........................ 14

*Brown v. Plata,*
   563 U.S. 493 (2011) ................................................................ 35, 46

*Carruthers v. Warden,*
   No. 3:20-CV-1016, 2020 WL 7353776 (N.D. Ind. Dec. 15,
   2020) ................................................................................ 50

*Carter-Mitchell v. Hastings,*
   No. 12 CIV. 4168, 2023 WL 3818565 (S.D.N.Y. June 5,
   2023) ............................................................................ 27-28

*Castro-Almonte v. Garland,*
   No. 23-297, 2024 WL 1551044 (2d Cir. Apr. 10, 2024) ...................... 22

*Chafin v. Chafin,*
   568 U.S. 165 (2013) .................................................................. 16

*Conn. Citizens Def. League, Inc., v. Lamont,*
   6 F.4th 439 (2d Cir. 2021) ........................................................... 27

*Cook v. N.Y. State Division of Parole,*
   321 F.3d 274 (2d Cir. 2003) ................................... 54-55, 62, 63

*Daker v. Warden,*
   805 F. App'x 648 (11th Cir. 2020) .............................................. 50

*Diaz v. Bennett,*
   No. 99-CV-1085, 2022 WL 17169532 (S.D.N.Y. Nov. 22,
   2022) ................................................................................. 5

*Diaz v. Keyser,*
   Order, No. 20-3947 (2d Cir. Jan. 5, 2021) .................................... 6

*Diaz v. Keyser,*
   No. 20 CIV. 5469, 2022 WL 2304271 (S.D.N.Y. June 27,
   2022) ................................................................................. 13

iv

*Diaz v. Keyser*,
No. 20 CIV 5469, 2022 WL 2612473 (S.D.N.Y. Feb. 17, 2022) ..................................................................... 13

*Diaz v. Kuhlman*,
Order, No. 01-2356 (2d Cir. Oct. 12, 2001 ) ......................... 5

*Dunlap v. Shinn*,
No. 21-16350, 2021 WL 6884871 (9th Cir. Nov. 17, 2021)................ 47

*Dunlap v. Shinn*,
No. 21-71273, 2021 U.S. App. LEXIS 33461 (9th Cir. Nov. 10, 2021) .................................................................. 47

*Estelle v. Gamble*,
429 U.S. 97 (1976) ................................................ 31

*Evans v. N.Y.C. Dep't of Educ.*,
No. 23-8119-cv, 2024 U.S. App. LEXIS 26043 (2d Cir. Oct. 16, 2024) ..................................................................... 27

*Fielding v. LeFevre*,
548 F.2d 1102 (2d Cir. 1977) .......................... passim

*Figueroa v. Keyser*,
Order, No. 23-7714 (2d Cir. May 15, 2024) ...................... 10

*Garcia v. Cates*,
No. 2:21-cv-07099, 2021 WL 5866632 (C.D. Cal. Dec. 10, 2021)................................................................. 47

*Gee v. Murphy*,
325 F. App'x 666 (10th Cir. 2009)........................... 48

*Gibson v. Bros.*,
No. CV 22-953, 2023 WL 8882337 (E.D. Pa. Dec. 6, 2023), *report and recommendation adopted sub nom. Gibson v. Mark Bros.*, 2023 WL 8879766 (E.D. Pa. Dec. 22, 2023) .................. 60

*Giraldo v. Kessler*,
694 F.3d 161 (2d Cir. 2012) ............................... 16

*Glaus v. Anderson,*
408 F.3d 382 (7th Cir. 2005) ............................................................ 48

*Gonzalez v. Crosby,*
545 U.S. 524 (2005) ........................................................................... 58

*Green v. Quiros,*
No. 21-1160, 2023 WL 4345405 (2d Cir. July 5, 2023) ...................... 14

*Hassoun v. Searls,*
976 F.3d 121 (2d Cir. 2020) .............................................................. 28

*Heck v. Humphrey,*
512 U.S. 477 (1994) ............................................................... 36, 37, 57

*Holloway v. Wolcott,*
No. 20 Civ. 6329 (FPG), 2020 WL 3172772 (W.D.N.Y.
June 15, 2020) .................................................................................... 62

*Hook v. Vandergriff,*
No. 4:20-CV-01067, 2023 WL 4198100 (E.D. Mo. June 27,
2023) ................................................................................................... 49

*Hope v. Warden, York County Prison,*
972 F.3d 310 (3d Cir. 2020) ........................................................ 51, 59

*Jackson v. Torres,*
720 F.2d 877 (5th Cir. 1983) ............................................................. 48

*James v. Walsh,*
308 F.3d 162 (2d Cir. 2002) .............................................................. 57

*Janakievski v. Exec. Dir.,*
955 F.3d 314 (2d Cir. 2020) ........................................................ 23, 25

*Jenkins v. Haubert,*
179 F.3d 19 (2d Cir. 1999) ........................................................... 34, 35

*Jones v. Smith,*
720 F.3d 142 (2d Cir. 2013) .............................................................. 40

*Kruger v. Erickson,*
  77 F.3d 1071 (8th Cir. 1996) ....................................... 48, 49

*Leather v. Ten Eyck,*
  180 F.3d 420 (2d Cir. 1999) ............................................... 35

*Longway v. Jefferson County Bd. of Sup'rs,*
  24 F.3d 397 (2d Cir. 1994) ................................................ 22

*Lopez v. Decker,*
  978 F.3d 842 (2d Cir. 2020) .............................................. 53

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000) ........................................... 41

*Martin v. Hadix,*
  527 U.S. 343 (1999) ........................................................... 30

*McCray v. Lee,*
  963 F.3d 110 (2d Cir. 2020) .............................................. 23

*McKithen v. Brown,*
  481 F.3d 89 (2d Cir. 2007) ................................................ 29

*Moore v. Colon,*
  No. 20-22032-CV, 2020 WL 5868179 (S.D. Fla. July 27,
  2020) ................................................................................. 50

*Moorish Science Temple of America, Inc. v. Smith,*
  693 F.2d 987 (2d Cir. 1982) ......................................... 25, 34

*Moss v. Harper,*
  Civil Action No. 2:22-cv-290, 2022 U.S. Dist. LEXIS 85789
  (W.D. Pa. Apr. 19, 2022) .................................................. 60

*Muhammad v. Close,*
  540 U.S. 749 (2004) ..................................................... 28, 30

*Naddi v. Hill,*
  106 F.3d 275 (9th Cir. 1997) ............................................. 40

*Nance v. Ward,*
    597 U.S. 159 (2022) .......................................................... 29, 30, 31, 32

*Nelson v. Campbell,*
    541 U.S. 637 (2004) ............................................................... 30

*Nettles v. Grounds,*
    830 F.3d 922 (9th Cir. 2016) (en banc) ................................. 46, 47, 55

*Newkirk v. Dir., Dep't of Corr.,*
    Civil Action No. 7:20cv00772, 2021 WL 24779 (W.D. Va.
    Jan. 4, 2021) ............................................................................ 51

*Nicholas v. Tucker,*
    114 F.3d 17 (2d Cir. 1997) ..................................................... 40

*Nogales v. Dep't of Homeland Sec.,*
    No. 21-10236, 2022 WL 851738 (5th Cir. Mar. 22, 2022) ................. 49

*O'Neal v. United States,*
    No. 22-cv-20193, 2022 WL 168536 (S.D. Fla. Jan. 19,
    2022) ......................................................................................... 50

*People ex rel. Carroll v. Keyser,*
    184 A.D.3d 189 (3d Dep't 2020) ...................................................... 8, 9

*People ex rel. Diaz v. Keyser,*
    193 A.D.3d 1165 (3d Dep't 2021) ................................................... 9, 10

*People ex rel. Diaz v. Keyser,*
    37 N.Y.3d 905 (2021) ....................................................................... 11

*People ex rel. Figueroa v. Keyser,*
    193 A.D.3d 1148 (3d Dep't 2021) ..................................................... 10

*People v. Diaz,*
    206 A.D.2d 314 (1st Dep't 1994) ........................................................ 5

*Peralta v. Vasquez,*
    467 F.3d 98 (2d Cir. 2006) ................................................................ 57

*Pinson v. Carvajal,*
  69 F.4th 1059 (9th Cir. 2023), *cert. denied sub nom. Sands
  v. Bradley*, 144 S. Ct. 1382 (2024) ................................................ 23, 48

*Poindexter v. Nash,*
  333 F.3d 372 (2d Cir. 2003) ................................................................ 53

*Porter v. Nussle,*
  534 U.S. 516 (2002) ............................................................................. 42

*Preiser v. Rodriguez,*
  411 U.S. 475 (1973) ...................................................................... passim

*Prentice v. Norvell,*
  No. 5:21-HC-2081, 2022 WL 4587842 (E.D.N.C. Sept. 29,
  2022) ...................................................................................................... 51

*Price v. Putnamville Corr. Facility,*
  No. 2:20-cv-00508, 2021 U.S. Dist. LEXIS 14209 (S.D. Ind.
  Jan. 26, 2021) ...................................................................................... 50

*Reyes v. Keane,*
  90 F.3d 676 (2d Cir. 1996) ................................................................. 43

*Rice v. Gonzalez,*
  985 F.3d 1069 (5th Cir. 2021) ........................................................... 48

*Rittenberry v. Morgan,*
  468 F.3d 331 (6th Cir. 2006) ............................................................. 53

*Robinson v. Sherrod,*
  631 F.3d 839 (7th Cir. 2011) ............................................................. 49

*Rynasko v. N.Y. Univ.,*
  63 F.4th 186 (2d Cir. 2023) ................................................................ 16

*Salahuddin v. Goord,*
  467 F.3d 263 (2d Cir. 2006) ............................................................... 23

*Santana v. United States,*
  98 F.3d 752 (3d Cir. 1996) ................................................................. 40

*Sher v. Coughlin*,
739 F.2d 77 (2d Cir. 1984) .................................................. 25

*Spencer v. Kemna*,
523 U.S. 1 (1998).............................................. 22, 26, 27

*Tafari v. Hues*,
473 F.3d 440 (2d Cir. 2007) ............................................. 41

*Thompson v. Choinski*,
525 F.3d 205 (2d Cir. 2008) ....................................... 24, 53

*Turner v. Suffolk Cnty.*,
No. 18-CV-5235, 2022 WL 3357944 (E.D.N.Y. Aug. 15,
2022).................................................................................. 16

*United States v. Sanchez-Gomez*,
584 U.S. 381 (2018)................................................... 26, 27

*United States v. Turner*,
No. 23-6277-CR, 2024 WL 3289476 (2d Cir. July 3, 2024) ............... 26

*Wilborn v. Mansukhani*,
795 F. App'x 157 (4th Cir. 2019).......................................... 51

*Wilkinson v. Dotson*,
544 U.S. 74 (2005)......................................... 29, 37, 55, 58

*Williams v. Birkholz*,
No. 20-cv-2190, 2021 WL 4155614 (D. Minn. July 20,
2021).................................................................................. 49

*Wilson v. Ponce*,
465 F. Supp. 3d 1037 (C.D. Cal. 2020) ............................. 56

*Wilson v. Williams*,
961 F.3d 829 (6th Cir. 2020)..................................... passim

*Wolff v. McDonnell*,
418 U.S. 539 (1974)............................................................. 30

*Woodford v. Ngo,*
 548 U.S. 81 (2006) .............................................................. 40

*Ziglar v. Abbasi,*
 582 U.S. 120 (2017) ........................................................... 30

CONSTITUTIONS

Eighth Amendment .................................................... passim

FEDERAL STATUTES

18 U.S.C.
 § 3626(a)(3) .................................................................. 41, 59
 § 3626(a)(3)(C)-(E) ............................................................ 42
 § 3626(g) ............................................................................ 43

28 U.S.C.
 § 1914(a) ............................................................................ 43
 § 1914(b) ............................................................................ 43
 § 1914(g) ............................................................................ 43
 § 1915(a) ............................................................................ 44
 § 1915(g) ..................................................................... 41, 44
 § 2241 .......................................................................... passim
 § 2244(d)(1)(A) .................................................................. 44
 § 2254 .......................................................................... passim
 § 2255 ................................................................................ 54

42 U.S.C. § 1983 ......................................................... passim

Prison Litigation Reform Act .......................................... passim

STATE STATUTES

New York Civil Procedure Law Article 70 ............................... 6

RULES

Federal Rules of Appellate Procedure 23 ............................... 25

Federal Rules of Civil Procedure 60(b) .................................... 5

**MISCELLANEOUS AUTHORITIES**

141 Cong. Rec. S7803-01 ............................................................... 45

142 Cong. Rec. S3446-02 ............................................................... 45

https://nysdoccslookup.doccs.ny.gov/ ...................................... 16

https://www.uscourts.gov/services-forms/fees/district-court-
    miscellaneous-fee-schedule ............................................... 43

Chris McKenna, *NY Closing 2 More Prisons, Sparking Fear
of Rural Job Loss. How Many Prisons Have Closed?,
lohud.com,* July 19, 2024 .................................................. 16

John Camera, *NYSCOPBA: New York State Not Proving
Enough Notice on Prison Closures, Spectrum 1 News,* Nov.
6, 2024 .............................................................................. 17

## PRELIMINARY STATEMENT

The principal issue presented on this appeal is whether the federal constitutional complaint of a sentenced state prisoner that he is entitled to immediate release because the correctional facility in which he is housed cannot keep him safe from illness and potentially death from COVID-19 is properly brought as a petition for habeas corpus under 28 U.S.C. § 2254 or can only be brought as a civil rights action under 42 U.S.C. § 1983. Petitioner brought this action as a habeas petition, alleging that conditions at the Sullivan Correctional Facility (CF) during the earliest days of the COVID-19 pandemic made him vulnerable to infection from COVID and required his release. The District Court dismissed the habeas petition, holding that petitioner was challenging the conditions of his confinement at Sullivan CF and that this claim must be brought under Section 1983.

The District Court's ruling was correct, but this Court cannot reach the issue because this case has become moot. Respondent previously moved to dismiss this appeal as moot on the ground that the threat presented by COVID has changed so dramatically since petitioner filed this action in 2020, but the Court denied that motion. In resuming work

on this appeal, however, we learned that petitioner's appeal is now moot for a different reason: Sullivan CF was closed in November 2024 for budgetary reasons, and petitioner has been transferred to a different facility, Sing Sing CF. Thus, petitioner's allegations regarding the risks he may have faced at Sullivan no longer have any relevance to his custody. It is well-settled that transfer to a different facility moots a prisoner's claim for prospective relief where that claim is based on complaints about his conditions of confinement.

Should the Court reach the merits, however, the District Court's decision should be affirmed. The Supreme Court has made clear that habeas petitions are proper when the petitioner is challenging the validity of his conviction or the length of his incarceration, but challenges to conditions of confinement must generally be brought under Section 1983. While the Supreme Court has left open the possibility that a habeas petition challenging conditions of confinement might be appropriate in some circumstances, the Supreme Court has never found such a habeas action appropriate, this Court has held that prison conditions claims cannot be brought through a habeas petition, and the overwhelming weight of authority in other Circuits has held that COVID-

related claims like those presented here cannot be brought through a habeas petition.

Moreover, this is the only conclusion consistent with congressional intent. In 1996, Congress enacted both the Antiterrorism and Effective Death Penalty Act ("AEDPA"), imposing strict limitations on the habeas remedy under Section 2254, and the Prison Litigation Reform Act ("PLRA"), curtailing the use of Section 1983 in prison conditions claims. The statutory scheme that Congress has devised provides a remedy for sentenced state prisoners who allege unconstitutional prison conditions—including potentially permitting release under extreme conditions—but that remedy is a civil rights action under Section 1983, not a petition for habeas corpus.

Petitioner's argument boils down to the claim that his petition is properly brought as a habeas petition because he is seeking his release as a remedy. But that cannot be the law. The Supreme Court has made clear that whether an action is properly brought as a habeas petition or a Section 1983 action depends on the *nature of the claim*, not the remedy sought. And it would not make sense to permit a petitioner to so easily avoid the significant restrictions that Congress imposed on the power of

federal courts to order release as a remedy for unconstitutional prison conditions, by allowing them to seek the same remedy in a habeas petition by the simple device of claiming that release was the only appropriate remedy.

## ISSUES PRESENTED

1.  Whether the appeal is moot where petitioner seeks release from custody based on conditions at a prison where he is no longer housed and which has now been closed?

2.  Whether a sentenced state prisoner fails to state a cognizable claim for habeas corpus relief under 28 U.S.C. § 2254 where he challenges only the risks to his health arising from COVID-19 in the prison environment and does not challenge the validity of his conviction or the validity or length of his sentence?

## STATEMENT OF THE CASE

### A.  Petitioner's Murder Conviction

In 1990, following a jury trial in Supreme Court, Bronx County, petitioner was convicted of murder, robbery, burglary, and conspiracy. Petitioner and his codefendants murdered a codefendant's former

employer, and held the victim's wife and teenage daughter captive while stealing the family's property. Petitioner was sentenced to an aggregate indeterminate prison term of from 38⅓ years to life. The conviction was affirmed, *People v. Diaz*, 206 A.D.2d 314 (1st Dep't 1994), and the New York Court of Appeals apparently denied leave to appeal in an unpublished order.[1]

In 1999, petitioner filed a habeas corpus petition under 28 U.S.C. § 2254 challenging his conviction. *See Diaz v. Kuhlman*, S.D.N.Y. Dkt. No. 99-cv-1085. The district court denied that petition, and, on October 12, 2001, this Court denied petitioner's motion for a certificate of appealability. *Diaz v. Kuhlman*, Dkt. No. 01-2356. On January 5, 2021, this Court denied petitioner permission to file a second habeas petition

---

[1] Respondent can find no official record that the Court of Appeals denied leave. However, in 2022, petitioner submitted a letter to the district court, which the court construed as a motion under Rule 60(b) of the Federal Rules of Civil Procedure to vacate the 2001 denial of his 1999 habeas petition. In denying that Rule 60(b) motion, the magistrate judge found that the Court of Appeals had denied leave to appeal, in reliance on an affidavit from the Bronx County District Attorney's Office setting out the procedural history of petitioner's state court appeals. *See Diaz v. Bennett*, No. 99-CV-1085, 2022 WL 17169532, at *1 (S.D.N.Y. Nov. 22, 2022), *report and recommendation adopted*, 2022 WL 17974898 (S.D.N.Y. Dec. 28, 2022).

challenging his murder conviction. Order, *Diaz v. Keyser*, Dkt. No. 20-3947, Dkt. 17.

Meanwhile, on July 3 and 4, 2020, petitioner filed habeas corpus petitions in both state and federal court, challenging the conditions of his confinement at Sullivan CF during the COVID-19 epidemic. These petitions are described below. He is currently serving his sentence at Sing Sing CF. He is eligible for parole on February 15, 2027.

## B. Petitioner's New York State Habeas Petition

### 1. The State Trial Court Ruling Denying Petitioner's COVID-19 Claim on the Merits

On July 4, 2020, petitioner filed a state habeas petition under New York Civil Procedure Law and Rules Article 70 in Supreme Court, Sullivan County. *See* State Court Record ("SR.") filed in the District Court below, *Diaz v. Keyser*, 20-cv-05469-NSR-PED (S.D.N.Y.), Dkt. 26-1 (filed Nov. 22, 2021), at 1-4. Petitioner sought "release from state custody," contending that his obesity and high blood pressure placed him "at great risk of death or grave illness" should he contract COVID-19 while incarcerated. (SR. 1-2.)

Respondent moved to dismiss the petition. (SR. 5-12.) The Superintendent of Sullivan CF at that time, William Keyser, submitted an affidavit explaining the numerous steps taken at Sullivan to reduce the risk of COVID-19 exposure and transmission. (SR. 28-34.) These included requiring staff to wear masks and socially distance; encouraging incarcerated individuals to socially distance; issuing masks to all incarcerated individuals; limiting intake from other facilities; taking the temperature of everyone entering the facility; requiring non-essential staff to remain home; displaying posters with information on COVID-19 approved by the New York State Department of Corrections and Community Supervision ("DOCCS"); using enhanced cleaning procedures consistent with Centers for Disease Control and Prevention ("CDC") and State health guidelines; issuing hand sanitizer to staff and incarcerated individuals; reconfiguring visiting rooms to reduce capacity; requiring masking during inmate processing and visits; instituting expanded COVID-19 testing; quarantining contacts of symptomatic persons; and isolating and treating those who test positive. (SR. 28-33.)

In addition, Keyser's affidavit established that DOCCS had implemented expanded testing protocols and had begun testing, among

others, all individuals aged 55 or over; all incarcerated individuals (whether symptomatic or asymptomatic) quarantined as a result of contact tracing; and all incarcerated individuals with chronic diseases who were housed at DOCCS' five Regional Medical Units. (SR. 33-34.)

Keyser also described DOCCS' ability to provide medical care to incarcerated individuals. DOCCS' medical staff were specially trained in infection control, and DOCCS had been acquiring medical equipment, such as negative air flow isolation rooms, to combat the spread of the virus and treat those afflicted. (SR. 28, 30.)

Respondent also submitted an attorney affirmation providing information on petitioner's medical condition obtained from a Nurse Administrator at Sullivan CF. (SR. 35-36.) The nurse explained that petitioner had been diagnosed with high blood pressure, which he treated with medication and monthly checkups, and that he was 5' 5" tall, and weighed 234.6 pounds. (SR. 35-36.)

On August 26, 2020, the state court denied the petition on the merits. (SR. 40.) The court found that the case was controlled by *People ex rel. Carroll v. Keyser*, 184 A.D.3d 189 (3d Dep't 2020), which denied habeas relief to another individual who sought release from Sullivan CF

based on his alleged vulnerability to severe COVID infection. Like petitioner, Carroll had argued that his underlying medical conditions and other factors made his continued detention at Sullivan CF during the COVID-19 pandemic "unconstitutional punishment that was 'cruel and unusual' and excessive." *Id.* at 191. *Carroll* held that the petitioner had not established "deliberate indifference" on the part of prison officials, given the numerous precautions that DOCCS had taken to combat the pandemic both at Sullivan CF and at DOCCS' facilities generally. *Id.* at 194-95.

## 2. The Appellate Division's Affirmance

On petitioner's *pro se* appeal from the denial of his state habeas petition (SR. 41-49), the Appellate Division, Third Department, unanimously affirmed. *People ex rel. Diaz v. Keyser*, 193 A.D.3d 1165 (3d Dep't 2021). (SR. 112-13.) After considering "the individual facts unique to petitioner's circumstances, *i.e.*, regarding his age and physical condition," the Appellate Division held that petitioner had "failed to meet his burden of demonstrating that his detention at [Sullivan CF] was illegal." *Id.* at 1166.

The Third Department adopted the reasoning of *People ex rel. Figueroa v. Keyser*, 193 A.D.3d 1148 (3d Dep't 2021), another case brought by an individual incarcerated at Sullivan CF.  *Diaz*, 193 A.D.3d at 1166.  (SR 114-16.)  *Figueroa* rejected the petitioner's Eighth Amendment claim because the petitioner had not shown that prison officials were deliberately indifferent to any risk.  193 A.D.3d at 1150 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994), and *Carroll*, 184 A.D.3d at 193-95).  *Figueroa* concluded that the "extensive protocols and preparedness measures . . . to stop the introduction of the novel coronavirus into [Sullivan CF] and its transmission within the facility" that were set forth in an affidavit were "sufficient to establish that prison officials did not disregard the risks posed by COVID-19." *Id.*[2]

### 3.  The Court of Appeals' Denial of Leave to Appeal

Petitioner filed a *pro se* application for leave to appeal to the New York Court of Appeals, contending that DOCCS had been deliberately

---

[2] This Court recently denied Figueroa's request to appeal the denial of his federal habeas petition challenging COVID-19 conditions at Sullivan CF in 2020.  Order, *Figueroa v. Keyser*, No. 23-7714 (May 15, 2024), Dkt. 17.

indifferent to the risks he faced from COVID-19, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.  (SR. 117.)

In his opposition, Respondent informed the Court that the State had expanded vaccine eligibility to all incarcerated persons in March 2021; that every incarcerated individual at Sullivan CF had been offered vaccination as of May 2021; and that everyone who had accepted the offer had been vaccinated.  (SR. 119.)

On September 2, 2021, the Court of Appeals denied leave to appeal. *People ex rel. Diaz v. Keyser*, 37 N.Y.3d 905 (2021).  (SR. 129.)

## C.    The Present Habeas Petition

### 1.    District Court Proceedings

In the petition here, also filed in July 2020, petitioner argued that his incarceration at Sullivan CF during the COVID-19 pandemic violated his right to be free from cruel and unusual punishment.   Petitioner claimed, as he had in his state habeas case, that his obesity and high blood pressure placed him at "high risk of serious illness or death" from COVID-19 because there was no vaccine or effective treatment for the virus.  (Petition ("Pet."), *Diaz v. Keyser*, No. 20-cv-5469 (S.D.N.Y. Jul. 3, 2020), Dkt. 2 at 2-4, 7-8.)

Petitioner alleged that Sullivan CF had mounted an inadequate response to COVID-19 at the prison. He complained that Sullivan CF failed to supply inmates with essential protective gear, like gloves and masks, and that frequently-touched shared surfaces, such as telephones and mops, were not cleaned regularly. He also complained that social distancing guidelines were being ignored, and that testing for the virus was insufficient. He further alleged that Sullivan CF was not complying with CDC guidelines promulgated for minimizing the spread of COVID-19. (Pet. at 3-4, 6, 9-13, 15.) Petitioner acknowledged that inmates who tested positive were placed in quarantine, but asserted that, in the absence of a cure or vaccine, such measures were ineffective, given that COVID-19 can also be spread by asymptomatic and pre-symptomatic individuals. (Pet. 1, 3-5, 11-12.)

Respondent moved to dismiss the petition on the ground that his claim was not cognizable under 28 U.S.C. § 2254. Respondent argued that the claim pertained to prison conditions, not to the validity of petitioner's conviction or sentence, and thus had to proceed via 42 U.S.C. § 1983.

In February 2022, a Magistrate Judge in the Southern District of New York (Davison, J.) recommended that the petition be dismissed on the ground that it did not state a cognizable habeas claim. *Diaz v. Keyser*, No. 20 CIV 5469, 2022 WL 2612473 (S.D.N.Y. Feb. 17, 2022). The Magistrate Judge recognized that the district "[c]ourts in this Circuit are divided on . . . whether a § 2254 habeas petition or a § 1983 action is the appropriate vehicle" for petitioner's claim, but adopted the reasoning of *Acevedo v. Capra*, 545 F. Supp. 3d 107 (S.D.N.Y. 2021), which held that such claims must proceed via 42 U.S.C. § 1983. 2022 WL 2612473 at *3-4.

Petitioner objected to the Magistrate Judge's Report and Recommendation, but in June 2022, the District Court (Roman, J.) overruled his objections, adopted the report, and dismissed the petition. *Diaz v. Keyser*, No. 20 CIV. 5469, 2022 WL 2304271 (S.D.N.Y. June 27, 2022).

## 2. Proceedings in this Court

### a. The Certificate of Appealability

In September 2022, petitioner moved in this Court for issuance of a certificate of appealability. (Dkts. 12, 37.) This Court initially deferred

decision on this motion pending the Court's resolution of three other appeals which raised the same issue, namely, whether pandemic-conditions claims were cognizable under 28 U.S.C. § 2254. (Dkt. 24.) However, on July 5, 2023, this Court dismissed each of those appeals because the petitioner had failed to exhaust his state court remedies, and the Court did not reach the question whether 28 U.S.C. § 2254 or 42 U.S.C. § 1983 was the proper procedural vehicle for raising such claims. *See Bowman v. Capra*, No. 21-1822, 2023 WL 4339502 (2d Cir. July 5, 2023); *Green v. Quiros*, No. 21-1160, 2023 WL 4345405 (2d Cir. July 5, 2023); *Brooks v. Annucci*, No. 21-852, 2023 WL 4344581 (2d Cir. July 5, 2023).

Accordingly, in December 2023, this Court issued a certificate of appealability in this case limited to the question "whether the district court properly concluded that Appellant's request for release from prison, based on the alleged unconstitutional conditions of confinement, must proceed under 42 U.S.C. § 1983, and not habeas." (Dkt. 42.) The Court's order noted that district courts in this Circuit had come to different conclusions on this issue, and ordered the appointment of counsel for petitioner to brief this issue.

### b. Respondent's Motion to Dismiss

On June 11, 2024, after petitioner had filed his appellant's brief, respondent moved to dismiss this appeal on the ground that the end of the pandemic had rendered petitioner's claims moot. (Dkt. 78.) Respondent included a declaration from Megan Yaiser, DOCCS' Assistant Commissioner in the Division of Health Services, who explained that all DOCCS inmates have been offered vaccines and boosters since 2021, and that petitioner had been vaccinated twice. Yaiser also explained that there have been no COVID fatalities at Sullivan CF since the pandemic began, and that more than sixty percent of its inmate population has been vaccinated. (Dkt. 78-3, ¶¶ 3, 7, 9, 11.)

Yaiser's declaration also noted that the anti-viral medications Paxlovid and Molnupiravir are available at all DOCCS facilities; described DOCCS' programs to reduce the risk of transmission of all viruses, including COVID, and explained that Sullivan CF offers round-the-clock healthcare to its residents and has an infirmary with isolation beds. (Dkt. 78-3, ¶¶ 2, 4, 6.)

A panel of this Court denied the motion to dismiss on October 9, 2024, citing *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598

U.S. 288, 295 (2023), and *Chafin v. Chafin*, 568 U.S. 165, 174 (2013), and

ordered the appeal to continue in the ordinary course. (Dkt. 114.)

## D. Petitioner's Recent Transfer

Upon resuming work on this appeal, counsel learned that petitioner

had been transferred from Sullivan CF to Sing Sing CF on September 25,

2024.[3] DOCCS transferred petitioner to Sing Sing because Sullivan CF

was slated for closure for budgetary reasons. In July 2024, after

petitioner had filed his brief in this Court and respondent had moved to

dismiss, DOCCS announced that, because New York's inmate population

had fallen far off its peak, Sullivan CF and another prison would close in

November 2024. *See* Chris McKenna, *NY Closing 2 More Prisons,*

*Sparking Fear of Rural Job Loss. How Many Prisons Have Closed?,*

---

[3] DOCCS online incarcerated lookup page shows that petitioner, whose inmate identification number is 90-B-2445 (Pet. at 1, 16, 17), is currently housed at Sing Sing CF. This record is available at: https://nysdoccslookup.doccs.ny.gov/. This Court may take judicial notice of this official record. *See, e.g., Rynasko v. N.Y. Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (citing Fed. R. Evid. 201(b)); *see also Turner v. Suffolk Cnty.*, No. 18-CV-5235, 2022 WL 3357944, at *2 (E.D.N.Y. Aug. 15, 2022) (collecting cases taking judicial notice of DOCCS inmate lookup records).

*lohud.com*, July 19, 2024.[4]  In November 2024, DOCCS confirmed that all Sullivan CF inmates had been transferred to other prisons.  *See* John Camera, *NYSCOPBA: New York State Not Proving Enough Notice on Prison Closures, Spectrum 1 News*, Nov. 6, 2024.[5]

## SUMMARY OF ARGUMENT

Petitioner's transfer from Sullivan CF due to Sullivan's closure has rendered the present action moot.  In both Section 1983 and habeas actions brought by federal prisoners, this Court has consistently held that an inmate's transfer moots claims for prospective relief against officials of the transferring facility.  Petitioner is no longer being held in the custody that he alleges was unlawful in 2020, and he does not allege any wrongdoing by officials at Sing Sing CF, where he is now confined.

If the court nevertheless reaches the merits, it should affirm.  The District Court correctly held that petitioner's claim about prison conditions during the COVID pandemic does not present a claim

_____

[4] *See* https://www.lohud.com/story/news/politics/albany-watch/2024/07/19/ny-closing-2-more-prisons-in-rural-areas-how-many-have-closed-so-far-hudson-valley-sullivan/74466664007/

[5] *See* https://spectrumlocalnews.com/nys/central-ny/news/2024/11/06/new-york-state-prison-closures

cognizable under 28 U.S.C. § 2254. The Supreme Court has held that a state prisoner's claims must proceed under the habeas statute if they lie at the "core" of habeas, *i.e.*, if they involve "a challenge to the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). Complaints about prison conditions, however, are generally raised in actions under Section 1983, because they do not challenge the state's authority to hold the person in custody – a claim that can only be vindicated by release – but rather they challenge the particular conditions of confinement – a claim that can be vindicated by changing the conditions of confinement and does not ordinarily warrant release.

Petitioner's claim here cannot properly be brought as a habeas petition because he does not challenge the validity of his conviction or the length of his sentence. Rather, he alleges only that his sentence is being carried out in an unconstitutional way, because of the alleged risks to his health created by the conditions at Sullivan CF during the early days of the pandemic. This is a classic prison conditions claim that cannot be raised in a 28 U.S.C. § 2254 action.

While the Supreme Court has left open the question whether a state prisoner's complaint about conditions of his confinement could *ever* be

pursued in a habeas petition, the Court's language and reasoning show that that would be an extraordinary case whose contours were yet to be determined, and there is no reason to think this is such a case. Rather, this case (and the many similar cases that were brought at the height of the COVID pandemic) should be governed by this Court's longstanding precedent, including *Fielding v. LeFevre,* 548 F.2d 1102 (2d Cir. 1977), which holds that a Section 1983 claim, rather than a habeas corpus action, is the proper vehicle where a sentenced state prisoner argues that deficient conditions in the state prison system render his confinement unconstitutional.

Petitioner's principal argument is that simply because he seeks immediate release from prison as a remedy, he has stated a cognizable habeas claim. However, the Supreme Court has made clear that in determining whether a claim presents a cognizable habeas action, the courts must look to the substance of the claim, not the prayer for relief. It cannot be the law that merely by asking for release as a remedy a prisoner can convert a challenge to prison conditions, cognizable only in a 1983 action, into a challenge to custody cognizable in a petition for federal habeas corpus.

Moreover, petitioner's claim is inconsistent with congressional intent, as manifested in the statutory scheme that governs prisoner litigation. In adopting the AEDPA and PLRA in 1996, Congress imposed strict limitations on both federal habeas corpus petitions and Section 1983 lawsuits, to curb what was perceived to be widespread abuse of these statutes. The PLRA permits prisoners to seek release as a remedy in actions under Section 1983, but only in the most limited circumstances. Congress could not have intended to allow prisoners to evade these restrictions simply by labelling their lawsuits as petitions under Section 2254.

The majority of the Circuit Courts that have considered the issue have reached the same conclusion that this Court reached in *Fielding*: that a sentenced state prisoner cannot challenge his conditions of confinement in a habeas petition. Since the onset of COVID-19, the overwhelming majority of courts around the nation have held that habeas does not lie where petitioners have sought release based on pandemic prison conditions. The minority of decisions that petitioner relies upon are inapposite, inconsistent with the decisions of this Court, and ultimately unpersuasive.

For all these reasons, if the Court reaches the merits, the decision of the court below should be affirmed.

# ARGUMENT

## POINT I

## THIS CASE IS MOOT

The Court has denied respondent's motion to dismiss on the ground that the facts regarding the COVID pandemic have so dramatically changed since petitioner filed this petition in July 2020 that the case is moot, and we do not seek to reargue that point here. But the recent closure of Sullivan CF and petitioner's transfer to Sing Sing have created an entirely new and different mootness issue that the Court is required to address before it can consider the merits. The petition in this case focused exclusively on Sullivan's handling of the health issues raised by the COVID pandemic and the risks that it presented to his health, and sought injunctive relief against the Superintendent of Sullivan CF, first William Keyser and later Respondent Stacie Bennett. But Sullivan has now closed, petitioner is now at a different facility, and there are no allegations in the petition which relate to conditions at Sing Sing, either

now or in the past.  In light of these developments, this case is moot, and this appeal must be dismissed.

A case is moot if it no longer presents a "case or controversy" within the meaning of Article III, § 2 of the Constitution.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  "If events occur during the pendency of an appeal that render the case moot, [this Court] must dismiss the appeal rather than issue an advisory opinion."  *Longway v. Jefferson County Bd. of Sup'rs*, 24 F.3d 397, 400 (2d Cir. 1994) (citing *Arthur v. Manch*, 12 F.3d 377, 380 (2d Cir. 1993), and *Town of Deerfield, New York v. FCC*, 992 F.2d 420, 427-28 (2d Cir. 1993)).  This Court has an "'independent obligation to ensure that developments in the case have not rendered the appeal moot.'"  *Castro-Almonte v. Garland,* No. 23-297, 2024 WL 1551044, at *1 (2d Cir. Apr. 10, 2024) (summary order) (quoting *United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007)).

Whether petitioner's claim was properly brought as a habeas petition or a Section 1983 suit, the claim – and hence that question – has been mooted by his transfer.  In Section 1983 suits, this Court has consistently held that "[a]n inmate's transfer from a prison facility moots his claims for declaratory or injunctive relief against officials of the

22

transferring facility." *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020); *see Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (collecting cases). This rule would apply here if the case had been brought as a Section 1983 action, because petitioner seeks injunctive relief in the form of release due to allegedly unconstitutional conditions at Sullivan CF, yet he is no longer incarcerated there.

Even if petitioner properly brought this claim as a habeas petition, however, it has still been mooted by his transfer. "A habeas petition is generally not moot so long as the petitioner continues to be held in the custody that he alleges is unlawful." *Janakievski v. Exec. Dir.*, 955 F.3d 314, 319 (2d Cir. 2020) (citing *Dhinsa v. Krueger*, 917 F.3d 70, 77 n.5 (2d Cir. 2019)). But here, petitioner alleges that it was his custody at Sullivan CF under pandemic conditions that violated his constitutional rights. As petitioner is no longer being held at Sullivan CF, much less being held under allegedly unlawful pandemic conditions, the petition is moot. *See Pinson v. Carvajal,* 69 F.4th 1059, 1064 (9th Cir. 2023), *cert. denied sub nom. Sands v. Bradley,* 144 S. Ct. 1382 (2024) (holding that federal inmate's habeas claims challenging conditions during COVID

pandemic became moot after his transfer to another prison because court could no longer provide the requested relief).

Although there is little precedent involving state prisoners bringing habeas petitions challenging conditions of confinement that are mooted by their transfer – because it is so clear that such claims by state prisoners must be brought under Section 1983, not habeas – this Court and the district courts in this Circuit have consistently held that actions brought by federal prisoners who challenge conditions of their confinement in habeas actions under 28 U.S.C. § 2241 become moot when the petitioner is transferred to a different facility.  *See, e.g., Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008); *Ahmed v. Otisville*, No. 23-CV-454, 2023 WL 9113089, at \*5 (S.D.N.Y. Dec. 13, 2023) (citing *Hill v. Zenk*, 115 F. App'x 97, 97 (2d Cir. 2004)).  And the district courts that have addressed COVID-related claims, in particular, by federal prisoners have consistently held that such habeas petitions become moot when the prisoners were transferred to different prisons.  *See, e.g., Ahmed*, 2023 WL 9113089, at \*4-5; *Aigbekaen v. Warden*, No. 3:21-CV-1672, 2022 WL 3347092, at \*3 (D. Conn. Aug. 12, 2022); *Ansari v. Tellez*, No. 20-CV-2041, 2021 WL 2010399, at \*3 (E.D.N.Y. Apr. 14, 2021).  This is so because

"prison wardens cannot control conditions of confinement at facilities which they do not manage." *Aigbekaen*, 2022 WL 3347092, at *3.[6]

Petitioner cannot defeat mootness by claiming that he is experiencing a continuing injury from his prior incarceration at Sullivan CF. "[A] habeas petition 'does not necessarily become moot' when the order it challenges is no longer in effect, so long as the petitioner suffers 'some concrete and continuing injury' or 'collateral consequence' resulting from the challenged order." *Janakievski*, 955 F.3d at 319 (quoting *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999)). Collateral consequences are presumed where a habeas petitioner challenges a

---

[6] Rule 23(a) of the Federal Rules of Appellate Procedure provides that when a habeas petition is under review by a federal court, the prison officials having custody of the prisoner must not transfer the inmate to another facility "unless a transfer is directed in accordance with this rule," which contemplates judicial supervision or approval of the transfer, per F.R.A.P. Rule 23(b). This rule was not followed here. As this Court has explained, however, the purpose of this rule is "to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court." *Moorish Science Temple of America, Inc. v. Smith*, 693 F.2d 987, 988 n.2 (2d Cir. 1982) (quoting *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir. 1981)). Accordingly, the Court in *Moorish Science Temple* held that a transfer within the state does not violate the rule, since "transfer within this state does not defeat the jurisdiction of this Court." 693 F.2d at 988 n.2; *accord Sher v. Coughlin*, 739 F.2d 77, 79 n.1 (2d Cir. 1984).

criminal conviction, *see United States v. Turner*, No. 23-6277-CR, 2024

WL 3289476, at *2 (2d Cir. July 3, 2024) (citing *Spencer,* 523 U.S. at 8),

but are not presumed in other contexts. *See Turner*, 2024 WL 3289476,

at *2 (citing *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999)).

Accordingly, to maintain suit, petitioner would have to prove that

he is suffering a "concrete and continuing injury" from his prior

incarceration at Sullivan CF. *Spencer*, 523 U.S. at 7. However, he has

failed to make any such showing. Indeed, the record from respondent's

motion to dismiss belies such a claim, since petitioner has been

vaccinated against COVID-19, there have been no COVID-19 fatalities at

Sullivan CF, and there is no reason to believe that petitioner suffered any

COVID-related injury at all during the four years of the pandemic that

he resided there. (Dkt. 78-3.)

Similarly, there is no basis for any exception to the mootness

doctrine here. There is a narrow exception to mootness for controversies

that are "capable of repetition, yet evading review." *United States v.

Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (internal quotation marks and

citation omitted). But a dispute is "capable of repetition" only if there is

"a reasonable expectation that the same complaining party will be

subjected to the same action again," *id.* (internal quotation marks and citation omitted); *Spencer*, 523 U.S. at 17, and there is no basis to make that claim here. COVID-19 was a singular disaster that is unlikely to recur, and petitioner's detention at Sullivan is also unlikely to recur.

There is no reason to believe that another novel disease with similar modes of transmission and lethality is likely to take root in any DOCCS facility in the foreseeable future. As this Court has observed, the "infrequency of pandemics" renders such an argument "speculative." *Conn. Citizens Def. League, Inc., v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021); *see Evans v. N.Y.C. Dep't of Educ.*, No. 23-8119-cv, 2024 U.S. App. LEXIS 26043, at *2-3 (2d Cir. Oct. 16, 2024) (affirming dismissal of discrimination complaint challenging withdrawn COVID-19 policy on mootness grounds, where there was no reasonable expectation that challenged conduct would recur). Nor is there any reason to believe that petitioner himself would be personally affected by some future pandemic, especially since he is eligible for parole in the near future.

And, in light of the fact that Sullivan CF has closed, the injuries alleged in the petition cannot recur as there is no reasonable possibility that he will ever return there. *See Carter-Mitchell v. Hastings*, No. 12

CIV. 4168, 2023 WL 3818565, at *2 (S.D.N.Y. June 5, 2023) (claims moot where petitioner was transferred from a facility that subsequently closed).

Accordingly, this case is moot. In these circumstances, when a case becomes moot on appeal, the established practice is to vacate the district court's decision and remand with instructions to dismiss the petition as moot. *See Hassoun v. Searls*, 976 F.3d 121, 130-31 (2d Cir. 2020).

## POINT II

### A PETITION SEEKING RELEASE FROM STATE PRISON DUE TO CONDITIONS DURING THE COVID-19 PANDEMIC DOES NOT PRESENT A HABEAS CLAIM COGNIZABLE UNDER 28 U.S.C. § 2254

### A. Habeas Review Is Unavailable to Sentenced State Prisoners Seeking to Challenge Prison Conditions

Petitioner is not entitled to invoke the habeas jurisdiction of the federal courts to review his conditions of imprisonment. Federal law provides "two main avenues to relief" for complaints related to state imprisonment: (1) petitions for habeas corpus under 28 U.S.C. § 2254, and (2) civil rights complaints under 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). There has been extensive litigation over

the years attempting to define the scope of these two statutes and the relationship between them. Section 1983 has the broader reach, authorizing suit against state officials for the "deprivation of any rights, privileges, or immunities" secured by the Constitution. As the Supreme Court recently observed, "[r]ead literally, that language would apply to all of a prisoner's constitutional claims, thus swamping the habeas statute's coverage of claims that the prisoner is 'in custody in violation of the Constitution.'" *Nance v. Ward*, 597 U.S. 159, 167 (2022) (quoting 28 U.S.C. § 2254(a)).

Thus, to preserve the habeas remedy, the Supreme Court has held that a state prisoner's claims must proceed under the habeas statute if they lie at the "core" of habeas, *i.e.*, if they involve "a challenge to the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *accord Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005). Claims that lie at the core of habeas may not be raised in a suit under 42 U.S.C. § 1983. *See McKithen v. Brown*, 481 F.3d 89, 100-02 (2d Cir. 2007). Thus, most petitions under 28 U.S.C. § 2254 challenge the validity of a state prisoner's conviction or sentence, though Section 2254 also applies to a state prisoner's challenge to the calculation of "good-time" credits or other

matters that affect the length of his authorized sentence. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974).

On the other hand, it is well settled that complaints about a state prisoner's conditions of confinement are and should be generally brought under 42 U.S.C. § 1983. *See, e.g., Muhammad*, 540 U.S. at 754-55; *Martin v. Hadix*, 527 U.S. 343, 347-49 (1999); *Abdul-Hakeem v. Koehler*, 910 F.2d 66, 68-69 (2d Cir. 1990). Indeed, the Supreme Court in *Nance v. Ward* explained that "the classic prisoner § 1983 suit is one challenging prison conditions," such as "overcrowding or inadequate medical care." 597 U.S. at 171.

The Supreme Court on several occasions has expressly left open the question whether a state prisoner's complaint about the conditions of his confinement could ever be pursued in a habeas petition under 28 U.S.C. § 2254. *See, e.g., Ziglar v. Abbasi*, 582 U.S. 120, 144 (2017); *Bell v. Wolfish*, 441 U.S. 520, 526-27 n.6 (1979); *Preiser*, 411 U.S. at 499. However, the Court's language in other cases has stated without qualification that claims related to conditions of confinement should be raised in a Section 1983 suit. For instance, in *Nelson v. Campbell*, 541 U.S. 637 (2004), a state capital defendant brought a Section 1983 suit in

order to challenge a prescribed method of execution as violative of the Eighth Amendment. In determining whether that claim instead had to be raised in a habeas petition under Section 2254, the Court contrasted habeas and Section 1983 claims, and explained that "constitutional claims that *merely challenge the conditions of a prisoner's confinement* . . . fall outside of that core and may be brought pursuant to § 1983." *Id.* at 643 (emphasis added). *See also Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.").

Similarly, the Supreme Court's recent decision in *Nance v. Ward* reinforced that an Eighth Amendment claim regarding the inadequacy of prison medical treatment and protection of an inmate's health must proceed under Section 1983. In deciding whether a capital defendant's suit seeking an unauthorized method-of-execution needed to proceed in habeas, the Court again analyzed the relationship between Section 1983 and the habeas statute, and reiterated that "core" habeas claims were those that challenge "the validity of a conviction or sentence." *Nance*, 597 U.S. at 167. The Court contrasted these "core" habeas claims with claims at the "opposite end of the spectrum," which are not cognizable in habeas,

and cited a suit "challenging the adequacy of a prison's medical care" as an example.  *Id*. at 168.  The Court noted that such a claim may proceed under Section 1983 and "falls outside habeas's core" because it "attack[s] not the validity of a conviction or sentence, but only a way of implementing the sentence . . . in other words, how the prescribed incarceration is being carried out."  *Id*. at 171-72.

Accordingly, petitioner's claim here cannot properly be brought as a habeas petition under 28 U.S.C. § 2254.  Petitioner does not challenge the validity of his conviction or the length of his sentence.  Instead, he alleges only that his sentence is being carried out in an unconstitutional way, because of the alleged risks to his health created by the allegedly overcrowded conditions, inability to maintain social distance, inadequate compliance with masking and cleaning protocols, and the prison's alleged failure to take appropriate steps to address these issues.  As his complaints merely challenge how his "prescribed incarceration is being carried out," *Nance,* 597 U.S. at 171-72, they must proceed in a Section 1983 action.

This analysis is consistent with this Court's longstanding precedent.  This Court has repeatedly held that a Section 1983 claim,

rather than a habeas corpus action, is the proper vehicle where a sentenced state prisoner does not attack his conviction or the validity or length of his sentence, but instead argues that deficient conditions in the state prison system render his confinement unconstitutional.

In *Fielding v. LeFevre*, 548 F.2d 1102, 1108 (2d Cir. 1977), a convicted state defendant sought release in a habeas action under 28 U.S.C. § 2254 on the ground that the prison's inability to provide him with access to appropriate psychiatric care made his confinement cruel and unusual. The Court rejected that claim, holding that it did not state a valid habeas claim and that the "proper remedy" for an unconstitutional denial of appropriate mental health care "is a suit under 42 U.S.C. § 1983 to compel the state to afford prisoners access to psychotherapy." *Id.*[7] This Court similarly rejected Fielding's claim that he faced an unconstitutional threat of sexual assault in prison; the Court explained

_____

[7] Petitioner argues that *Fielding* rejected the petitioner's claim based on a failure of proof, rather than because he was pursuing the wrong remedy (Br. 18), but this argument is incorrect. While the Court did observe that there was a lack of proof that Fielding could not receive adequate mental health treatment in prison, 548 F.2d at 1108, the Court went on to hold that even if it were true that there was no psychiatric care at all available in prison, he was still required to bring his claim in a Section 1983 suit, not in a habeas petition under 28 U.S.C. § 2254. *Id.*

that because such attacks could be prevented, "the proper remedy again is not release, but a suit under 42 U.S.C. § 1983." *Id.* at 1109.

Moreover, in *Moorish Science Temple of America, Inc. v. Smith*, 693 F.2d 987 (2d Cir. 1982), a sentenced state prisoner filed a habeas petition under 28 U.S.C. § 2254 that, in part, alleged that he was being subjected to unconstitutional prison conditions, in that the prison failed to provide him food consistent with his religious beliefs. The district court had summarily dismissed the habeas petition for failure to exhaust state remedies, but this Court reversed as to the prison conditions claim. The Court held that the district court should have construed that claim as pleading a civil rights violation cognizable under 42 U.S.C. § 1983 and reached the merits, since exhaustion was not then a prerequisite to bringing suit under Section 1983, and prison conditions claims lie outside the core of habeas. 693 F.2d at 989 (citing *Preiser*, 411 U.S. at 498).

Furthermore, in *Jenkins v. Haubert*, 179 F.3d 19, 21, 27-28 (2d Cir. 1999), the Court recognized that state prisoners are "unable to challenge" conditions of confinement "through a petition for federal habeas corpus" where those conditions result from disciplinary proceedings that do not affect overall sentence length. As the Court explained, habeas is

unavailable because the dispute involves only the "conditions," not "the fact or duration of a prisoner's overall confinement." 179 F.3d at 28. *See also Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (describing *Jenkins* as a case in which inmate "has no remedy in habeas corpus").

Disregarding this authority, petitioner's principal argument on this appeal is that simply because he seeks his immediate release from prison as a remedy, he has stated a cognizable habeas claim, because only through habeas can he be released from state custody. (Br. 9-10.) Petitioner's premise is incorrect; in fact, release from prison is an available remedy in Section 1983 actions in limited, extreme circumstances, as Congress recognized in enacting the Prison Litigation Reform Act discussed in detail below. (*See* pp. 41-42, *infra.*; *Brown v. Plata*, 563 U.S. 493 (2011)). More important, accepting the notion that a prisoner can determine by himself whether a claim is properly presented under 42 U.S.C. § 1983 or 28 U.S.C. § 2254 simply by manipulating the relief he seeks would obliterate all of the guardrails that distinguish between these two distinct forms of relief and the restrictions that Congress has imposed on these actions.

This is not the law.  Instead, the Supreme Court has held that in determining whether a claim presents a cognizable habeas action, the courts must look to the substance of the claim, not the prayer for relief. The Court has enforced the boundary line between habeas and Section 1983 in both directions, and in both cases it has instructed that the substance of the claim and not the prayer for relief is controlling.  Thus, in *Heck v. Humphrey*, 512 U.S. 477 (1994), the plaintiff filed a damages suit against prosecutors under Section 1983 for allegedly engaging in unlawful conduct to obtain a wrongful conviction, but did not seek to invalidate the conviction.  The Court held that a claim is not cognizable in a Section 1983 suit, however, if success on the claim would necessarily imply the invalidity of the prisoner's conviction or sentence (unless the conviction has already been invalidated in another proceeding such as an appeal or prior habeas action).  This rule is essential to ensure that Section 1983 is not used as a substitute for habeas to undermine otherwise valid state-court convictions, which would allow petitioners to circumvent the exhaustion of state court remedies required under habeas.  This rule applies even where a Section 1983 action only seeks damages, *i.e.*, the plaintiff cannot argue that he has properly presented

his claim under Section 1983 simply because he does not seek release as his remedy. *Id.* at 482-83; *accord Wilkinson v. Dotson*, 544 U.S. at 81-82 ("a state prisoner's § 1983 action is barred (absent prior invalidation)—*no matter the relief sought* (damages or equitable relief) . . .—if success in that action *would necessarily demonstrate the invalidity of confinement or its duration*." (emphasis added).[8]

Similarly, in *Preiser v. Rodriguez*, the Supreme Court directed lower courts to look to the substance of a claim, rather than the plaintiff's characterization of it, in determining whether the claim was properly brought as a habeas petition or under Section 1983. The Court observed that habeas actions have stringent exhaustion requirements that a prisoner should not be permitted to bypass by designating his suit as a

---

[8] Petitioner also argues that he is required to bring his conditions of confinement claim as a habeas petition, because a favorable habeas termination is a prerequisite for bringing suit under Section 1983. (Br. 10.) Petitioner is mistaken. The favorable termination rule set out in *Heck* provides that to recover damages for an unlawful conviction or sentence, the litigant must first prove the unlawfulness of the conviction or sentence in a separate action, such as an appeal, post-judgment motion, or habeas action. 512 U.S. at 486-87. This rule has no application here, however, because petitioner's conditions of confinement claim is not an attack on the lawfulness of his conviction or sentence. Thus, petitioner's suggestion that his claim is a "hybrid" action that must be litigated through habeas (Br. 9-10, 20) is incorrect.

civil rights action. As the Court explained: "It would wholly frustrate explicit congressional intent to hold that the respondents in the present case could evade [the exhaustion] requirement by the simple expedient of putting a different label on their pleadings." 411 U.S. at 489-90. So here, too, petitioner's bald assertion that he is entitled to release should not enable him to override Congress's clear intent that state prisoner's prison-conditions claims proceed under Section 1983. *See infra* at 39-46.

*Preiser* also made clear that a request for release, in and of itself, could not confer habeas jurisdiction, because the prayer for relief is only a part of the assessment required to determine whether the claim states a valid habeas claim. As the Court held, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. at 500. Petitioner would have this Court ignore the first half of this test – that the claim must challenge the validity of his conviction or sentence – but that is an essential part of the test.

The allegations in the present petition do not sound in habeas because they pertain solely to the conditions at Sullivan CF during the summer of 2020—and not at all to the validity of petitioner's murder conviction or the length of his sentence. Like the petitioner in *Fielding*, petitioner alleges that prison officials are incapable of protecting his health. As in *Fielding*, the petition here focuses exclusively on the conduct of prison administrators unrelated to the calculation of petitioner's sentence: petitioner complains that prison personnel have failed to protect his health by providing masks, cleaning common areas, and ensuring that inmates are six feet apart. And as in *Fielding*, the alleged deficiencies that petitioner identifies admit of numerous remedies short of release.

## B. Permitting State Prisoners to Litigate Conditions of Confinement Claims via Habeas Petitions Would Be Inconsistent with Congressional Intent.

The reforms enacted by Congress in 1996, which were designed to minimize frivolous litigation by sentenced state prisoners, compel the conclusion that state prisoners may challenge the conditions of their confinement in federal court only in a Section 1983 suit. It is important to bear in mind that the habeas corpus remedy under 28 U.S.C. § 2254 is

a creature of statute, even though it may have its roots in the common law, and its proper scope must be interpreted in light of congressional intent.

Congress in 1996 believed that prisoners across the country were consuming an inordinate amount of federal judicial resources by filing a large number of meritless cases—both habeas petitions and civil rights actions. Congress responded by adopting two reform packages, each addressing a different type of prisoner action: (1) the AEDPA, designed to curb meritless habeas corpus petitions, and (2) the PLRA designed to curb meritless complaints about prison conditions. *See, e.g., Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997); *Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir. 1997); *Santana v. United States*, 98 F.3d 752, 755 (3d Cir. 1996).

These reforms, which were enacted "contemporaneously," *see Woodford v. Ngo*, 548 U.S. 81, 97 (2006), made plain Congress's intent to have state prisoners resolve their prison-conditions claims through civil rights lawsuits subject to a distinct set of restrictions—and not through habeas petitions. The remarks of the PLRA's sponsors reflect Congress's decision to stem frivolous prison-conditions actions by, among other things, applying substantial fees and limits to repeat filings. *See Jones*

*v. Smith*, 720 F.3d 142, 147 (2d Cir. 2013) (summarizing sponsors' remarks about the need to curtail frivolous suits).[9] At the same time, the sponsors' remarks evinced a desire to ensure that legitimate prisoner claims, such as a claim that a prison was not safeguarding the health of its inmates, could be heard in civil rights lawsuits. *See Lopez v. Smith*, 203 F.3d 1122, 1129-30 (9th Cir. 2000) (quoting 141 Cong. Rec. S146110-01, S14267 (daily ed. Sept. 29, 1995) (remarks of Sen. Hatch)).

The PLRA also set new standards for issuing prisoner release orders in prison-conditions cases. Congress codified the power of the federal courts to order the release of prisoners to remedy constitutional violations established in Section 1983 actions—but limited that remedy to exceptionally narrow circumstances. *See* 18 U.S.C. § 3626(a)(3). Among other things, the PLRA allows release as a remedy only when less

---

[9] One way that Congress pursued these objectives in the PRLA was through a "three strikes" provision that prevents inmates bringing prison-conditions suits under 42 U.S.C. § 1983 from qualifying for poor-person status if they had filed three prior such actions that had been dismissed as frivolous, malicious or for failure to state a claim. 28 U.S.C. § 1915(g). This "three strikes" rule was designed to "force [inmates] to go through the same thought process non-inmates go through before filing a suit, *i.e.*, is filing this suit worth the costs?" *Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007) (quoting *Rodriguez v. Cook*, 169 F.3d 1176, 1181 (9th Cir. 1999)).

intrusive measures have already failed, and a three-judge panel finds by clear and convincing evidence that no other remedy will satisfactorily alleviate a constitutional violation that is caused by overcrowding. 18 U.S.C. § 3626(a)(3)(C)-(E).

These reforms work together to restrict litigation over prison conditions by limiting inmates' incentives to bring such actions without good reason: on the front end, the three-strikes provision made frivolous prison-conditions litigation a costly proposition for repeat filers, and on the back end, Congress greatly restricted the ability of prisoner litigants to obtain the remedy of release, recognizing that a meritorious challenge to prison conditions is best remedied by correcting the prison conditions rather than by release.

Moreover, Congress broadly applied the PLRA's procedural requirements "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA thus covers all "civil proceedings arising under Federal law with respect to the conditions of confinement or the effects

of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g).

Yet the PLRA specifically exempts "habeas corpus proceedings challenging the fact or duration of confinement in prison." *Id.* The cost to bring a habeas proceeding remains a *de minimis* $5, *see* 28 U.S.C. § 1914(a). As this Court observed shortly after enactment of AEDPA and the PLRA, Congress specifically "endeavored to make the filing of a habeas corpus petition easier than the filing of a typical civil action by setting the district court filing fee at $5, compared to the $120 applicable to civil complaints." *Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir. 1996), *abrogated on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).[10]

Habeas proceedings are also exempted by 18 U.S.C. § 3626(g) from the PLRA's restrictions on federal courts' authority to order state prisoners released, recognizing that when the constitutional defect involves the state's authority to hold the prisoner at all, rather than the

_____

[10] The fee for filing a civil action, including an action under Section 1983, has since been increased to $350, plus an administrative fee of $55. (subject to a waiver of the fee and leave to proceed in forma pauperis, when warranted). *See* 28 U.S.C. §§ 1914(a), 1914(b), 1914(g); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule (item 14). But the fee for filing a petition for habeas corpus remains a nominal $5. 28 U.S.C. § 1914(a).

manner in which the prisoner is held, the presumptive remedy must be release. Congress instead dealt with the excesses it perceived in state prisoners' habeas corpus litigation by different means more appropriate to challenges to state court criminal judgments—such as a one-year statute of limitations, strict exhaustion of state remedies requirements, and requiring very substantial deference to state court decisions. 28 U.S.C. §§ 2244(d)(1)(A), 2254(b), (d).

These legislative actions refute the notion that Congress could possibly have intended to leave habeas corpus petitions under 28 U.S.C. § 2254 open as an alternative path for sentenced state prisoners to litigate complaints about prison conditions. While Congress provided for waiver of the fees on a motion to proceed in poor person status, 28 U.S.C. § 1915(a), it sought to discourage frivolous prison-conditions suits by, among other things, denying poor-person status to prisoners who had abused the system. 28 U.S.C. § 1915(g). It would not make sense to allow those same abusive litigants to challenge prison conditions in a habeas corpus petition, a type of filing that imposes de minimis filing fees and does not tie poor-person status to the absence of a history of meritless actions. Nor would it make sense for Congress to narrowly circumscribe

the federal courts' authority to order release as a remedy for unconstitutional prison conditions, only to allow prisoners to seek the same remedy in a habeas corpus action unfettered by the PLRA's remedial provisions.

Indeed, AEDPA's sponsors, some of whom also sponsored the PLRA, explained that the habeas reforms were necessary to bring finality to the review of state prisoners' convictions and sentences; at no point did the sponsors hint that 28 U.S.C. § 2254 provided an alternate path for review of complaints about prison life. *See*, *e.g.*, 141 Cong. Rec. S7803-01, S7822, 1995 WL 338025 (remarks of Sen. Nickles) ("The current system of Federal habeas corpus defeats the important objective of having an end to litigation."); 142 Cong. Rec. S3446-02, S3447, 1996 WL 182597 (remarks of Sen. Hatch).

These points underscore that Congress did not contemplate or intend to permit the sort of civil action that petitioner attempts to bring here: a habeas corpus proceeding that challenges his conditions of confinement. Indeed, petitioner's principal complaint here—about prisoners' lack of social distancing—is exactly the type of claim that could be judicially cured, either by internal prison measures or by the release

of prisoners in rare circumstances where no other solution will suffice, if petitioner were to file a civil rights lawsuit under Section 1983 and follow the procedures set forth in the PLRA. *See, e.g., Brown v. Plata*, 563 U.S. 493 (2011). Congress did not intend to leave a state prisoner free to do an end-run around those procedures by simply labeling his prison-conditions complaint as a petition for a writ of habeas corpus.

**C. The Majority of Circuits Have Rejected Efforts of Sentenced State Prisoners to Challenge Prison Conditions Through Habeas Petitions**

Most of the Circuit Courts that have considered the issue have reached the same conclusion that this Court reached in *Fielding*: that a sentenced state prisoner cannot challenge his conditions of confinement in a habeas petition.

In the Ninth Circuit, for example, in *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), a sentenced California prisoner had filed a federal habeas petition challenging a prison disciplinary action that he claimed had delayed his parole hearing and could provide grounds for a future denial of parole. An en banc panel of the Ninth Circuit held that this claim fell outside the "core" of habeas corpus, and thus was not cognizable in a habeas action, because the disciplinary

decision did not impact the fact or duration of the petitioner's confinement. In reaching this conclusion, the Ninth Circuit considered the legislative histories of AEDPA and the PLRA, and concluded that "'[i]t would wholly frustrate explicit congressional intent' to hold that prisoners could evade the requirements of the PLRA 'by the simple expedient of putting a different label on their pleadings.'" *Id*. at 932 (quoting *Preiser*, 411 U.S. at 489-90).

In reliance on *Nettles*, the Ninth Circuit has ruled that a sentenced state prisoner who sought release from prison "due to the COVID-19 pandemic virus outbreak and his serious underlying medical conditions" did not state a habeas claim cognizable under 28 U.S.C. § 2254, *Dunlap v. Shinn*, No. 21-71273, 2021 U.S. App. LEXIS 33461, at *1 (9th Cir. Nov. 10, 2021), although the petitioner could raise such claims in a Section 1983 suit. *Dunlap v. Shinn*, No. 21-16350, 2021 WL 6884871, at *1 (9th Cir. Nov. 17, 2021); *see also Garcia v. Cates*, No. 2:21-cv-07099, 2021 WL

5866632, at *7 (C.D. Cal. Dec. 10, 2021) (collecting district court cases within the Ninth Circuit on this issue).[11]

The Fifth, Seventh, Eighth, and Tenth Circuits have likewise held that state prisoner claims that did not challenge the validity of their conviction or the length of their sentence do not state a cognizable habeas claim. *See, e.g., Gee v. Murphy*, 325 F. App'x 666, 669-70 (10th Cir. 2009); *Glaus v. Anderson*, 408 F.3d 382, 386-87 (7th Cir. 2005); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996); *Jackson v. Torres*, 720 F.2d 877, 878-79 (5th Cir. 1983).

The Fifth Circuit thus held that habeas review was unavailable to consider a Texas pretrial detainee's claim that jail conditions made him vulnerable to severe infection from COVID-19, as that claim was "unrelated to the cause of detention." *Rice v. Gonzalez*, 985 F.3d 1069,

---

[11] Recently, in *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023), the Ninth Circuit rejected the same argument by a federal prisoner that petitioner raises here – that his pandemic era prison conditions claim should be permitted to proceed in habeas because he seeks release as his remedy. As the court explained, "the relevant question is whether, based on the allegations in the petition, release is legally required irrespective of the relief requested." *Id*. at 1072 (emphasis in original). The court held the petitioner failed to support his claim that release was required because he could not show that no set of conditions would cure the alleged constitutional violations. *Id*. at 1075.

1070 (5th Cir. 2021); *accord Nogales v. Dep't of Homeland Sec.*, No. 21-10236, 2022 WL 851738, at *1 (5th Cir. Mar. 22, 2022).

In *Kruger*, the Eighth Circuit held that a sentenced Minnesota prisoner had not stated a cognizable claim for habeas relief when he argued that his incarceration was unlawful because he had been compelled to provide a DNA sample. 77 F.3d 1071. The Eighth Circuit explained that habeas is unavailable when a petitioner "fails to attack the validity of his sentence or the length of his state custody," and that "[t]he prisoner's label cannot be controlling." *Id.* at 1073 (citing *Preiser*, 411 U.S. at 489-90). Following *Kruger*, district courts in the Eighth Circuit have found that habeas does not lie where petitioners have sought release based on prison conditions during the coronavirus pandemic. *See, e.g., Hook v. Vandergriff,* No. 4:20-CV-01067, 2023 WL 4198100, at *3 (E.D. Mo. June 27, 2023); *Williams v. Birkholz*, No. 20-cv-2190, 2021 WL 4155614, at *5-8 (D. Minn. July 20, 2021), *report and recommendation adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021).

Similarly, in a case brought by a federal inmate, the Seventh Circuit held that "habeas corpus is not a permissible route for challenging prison conditions." *Robinson v. Sherrod*, 631 F.3d 839, 841 (7th Cir.

2011).  As a result, district courts in that circuit have dismissed habeas actions brought by state prisoners that complain about conditions during the coronavirus pandemic.  *See, e.g., Price v. Putnamville Corr. Facility*, No. 2:20-cv-00508, 2021 U.S. Dist. LEXIS 14209, at *2 (S.D. Ind. Jan. 26, 2021); *Carruthers v. Warden*, No. 3:20-CV-1016, 2020 WL 7353776, at *1 (N.D. Ind. Dec. 15, 2020).

And in *Daker v. Warden*, 805 F. App'x 648 (11th Cir. 2020), the Eleventh Circuit held that a Georgia inmate's claims that he had been denied medical care and was exposed to unsanitary conditions were cognizable under 42 U.S.C. § 1983—but not under 28 U.S.C. § 2254— where those claims did not challenge the duration of the petitioner's prison sentence.  *Id*. at 651.  District courts in the Eleventh Circuit have accordingly held that prisoners who seek release based on conditions of confinement related to the coronavirus pandemic do not state a cognizable habeas claim.  *See, e.g., O'Neal v. United States*, No. 22-cv-20193, 2022 WL 168536, at *2 (S.D. Fla. Jan. 19, 2022); *Moore v. Colon*, No. 20-22032-CV, 2020 WL 5868179, at *5 (S.D. Fla. July 27, 2020), *report and recommendation adopted*, 2020 WL 58486687 (S.D. Fla. Sept. 30, 2020).

While the Fourth Circuit has not ruled on this question in a published decision, unpublished decisions by that court have repeatedly declined to recognize conditions-of-confinement claims as habeas claims. *See Wilborn v. Mansukhani,* 795 F. App'x 157, 163-64 (4th Cir. 2019) (citing cases). Accordingly, district courts in the Fourth Circuit have held that a state prisoner's claim for release based on prison conditions during the coronavirus pandemic is not cognizable in habeas. *See, e.g., Prentice v. Norvell*, No. 5:21-HC-2081, 2022 WL 4587842, at *7-9 (E.D.N.C. Sept. 29, 2022); *Newkirk v. Dir., Dep't of Corr.*, Civil Action No. 7:20cv00772, 2021 WL 24779, at *1-2 (W.D. Va. Jan. 4, 2021).

Thus, the great weight of federal appellate authority accords with this Court's reasoning in *Fielding* that sentenced state prisoners cannot use federal habeas corpus petitions to litigate prison-conditions claims. This Court should adhere to that reasoning here.

## D. The Authority Cited by Petitioner Is Inapposite and Should Not Be Followed

In support of his argument that he has properly pleaded a habeas claim under 28 U.S.C. § 2254, petitioner relies in part on two decisions from other circuits: *Hope v. Warden, York County Prison*, 972 F.3d 310

(3d Cir. 2020), and *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). *See* Br. 13 (citing *Hope*); Br. 13-14, 19, 21 (citing *Wilson*). Both of these decisions are inapposite, however, because they involve claims presented by *federal* prisoners under a different federal statute, 28 U.S.C. § 2241. In any event, the reasoning of both decisions is inconsistent with the governing case law and should not be followed.

### 1. The Cited Decisions Are Inapposite.

In *Hope*, the petitioners were immigration detainees housed at two federal facilities; in *Wilson*, they were convicted federal prisoners at a low-security prison. Both groups of prisoners filed petitions for habeas corpus under Section 2241, claiming that the risks to their health presented by COVID were so great that they were entitled to their immediate release, and that there were no steps that the prison authorities could take to eliminate the allegedly unconstitutional risks. Both courts held that in light of the petitioners' demand for release and the claimed absence of any steps that prison authorities could take, they were entitled to file a habeas petition under Section 2241.

These cases are inapposite because they involve federal prisoners making claims under a different habeas statute, 28 U.S.C. § 2241.

"Section 2241 provides generally that the federal courts have the power to grant writs of habeas corpus, *see* 28 U.S.C. § 2241(a), in behalf of, *inter alios*, prisoners who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). But relief under that provision is *not* available to sentenced state prisoners like the petitioner here. Congress has commanded that state prisoners must instead proceed under 28 U.S.C. § 2254, which applies to petitions filed on behalf of any "person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). Section 2254 thus operates as "a limitation on the general grant of jurisdiction conferred in section 2241 that applies to cases involving prisoners subject to state court judgments." *Rittenberry v. Morgan*, 468 F.3d 331, 337 (6th Cir. 2006).

In this light, there is nothing surprising about the decisions in *Hope* and *Wilson* to permit federal prisoners to raise what is in substance a conditions-of-confinement claim in a Section 2241 petition. This Court, too, allows individuals in federal custody to seek release based on prison conditions under 28 U.S.C. § 2241. *See, e.g., Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020); *Thompson v. Choinski*, 525 F.3d 205 (2d Cir. 2008).

But the scope of these two federal habeas statutes is not identical —and sentenced state prisoners cannot challenge their custody under Section 2241, even when they seek to raise the same type of claim that federal prisoners could litigate under that section. In *Cook v. N.Y. State Division of Parole*, 321 F.3d 274, 277-79 (2d Cir. 2003), this Court held that a state prisoner's habeas challenge to his parole revocation had to proceed under Section 2254, not Section 2241. *Cook* involved a sentenced state prisoner who filed a Section 2241 petition claiming that his parole revocation hearing had been procedurally flawed and that the parole board's failure to fix a date for his release constituted cruel and unusual punishment. 321 F.3d at 277. This Court held that as a state prisoner, Cook had to file his petition under Section 2254, not 2241. *Id.* at 278.

The Court rejected Cook's argument that his claims were analogous to the claims of *federal* prisoners whose complaints about the execution of their sentence could be raised in a Section 2241 petition. *Id.* (collecting cases). The Court distinguished between state and federal prisoners because the statute that permits federal prisoners to challenge their convictions, 28 U.S.C. § 2255, does not permit federal prisoners to bring habeas claims challenging the execution of their sentence, thereby

arguably relegating them to Section 2241. In contrast, state prisoners who seek release based on a federal challenge either to their convictions or the execution of their sentences are covered by 28 U.S.C. § 2254. *Id.*

There is also no need for this Court to extend to sentenced state prisoners the same ability to challenge prison conditions under Section 2254 that it has extended to federal prisoners under Section 2241. As discussed above (at pp. 39-46), although state prisoners cannot file a habeas petition challenging their conditions of confinement, they can challenge prison conditions in federal court by filing suit under 42 U.S.C. § 1983. But that remedy is not available to federal prisoners, *see, e.g., Wilkinson*, 544 U.S. at 87 (Scalia, J., concurring); *Nettles*, 830 F.3d at 931 n.6, and absent a petition under Section 2241, they might well have no remedy at all, other than the uncertain possibility of a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Moreover, allowing state prisoners to litigate allegedly unconstitutional conditions of confinement via habeas corpus raises weighty federalism concerns by creating a possible end-run around the strict remedial limitations that Congress imposed on such cases in the

PLRA. *See Benjamin v. Jacobson*, 172 F.3d 144, 165 (2d Cir. 1999) (en banc) (noting that Congress adopted PLRA's remedial provisions "to promote, *inter alia*, principles of federalism and judicial restraint"); *Wilson v. Ponce*, 465 F. Supp. 3d 1037, 1046 (C.D. Cal. 2020) (observing that orders of release for Eighth Amendment violations implicate federalism where state institutions are involved). The same federalism concerns are not implicated when a prison-conditions complaint is brought by federal prisoners.

## 2. The Cited Decisions Should Not Be Followed.

In any event, the approach taken by the Sixth and Third Circuits is inconsistent with the governing case law and should not be followed.

In *Wilson,* federal inmates in Ohio sought release under Section 2241 claiming that their conditions of confinement related to COVID-19 in April 2020 violated the Eighth Amendment. 961 F.3d at 832-33. A medically vulnerable subclass claimed that only release could cure the violation. *Id*. at 835-36. The district court issued a preliminary injunction directing federal prison authorities to, among other things, evaluate the subclass members for transfer or release. *Id*. at 833, 836. On appeal, the Sixth Circuit held that 28 U.S.C. § 2241 conferred habeas

jurisdiction "[t]o the extent the medically vulnerable petitioners argue the alleged unconstitutional conditions of their confinement can be remedied only by release." *Id*. at 837.

That conclusion is flawed in several respects. *First*, the Sixth Circuit tied the availability of habeas review to the label used by the inmates and the relief they requested, not to the factual basis for their claims: because the Supreme Court in *Preiser* had described "release" as the "heart of habeas corpus," and the medically vulnerable subclass sought release, the Sixth Circuit reasoned that those inmates had stated a habeas claim. *Id*. at 838. But the Supreme Court has instructed courts to look to the "substance" of a habeas petitioner's filing, rather than the label used by the petitioner, in determining whether the litigant has filed a habeas petition. As explained above, a filing labelled as a complaint under 42 U.S.C. § 1983 should be construed as a habeas petition where it alleges facts that, if proved, would invalidate a conviction or show a miscalculation of a sentence. *Heck*, 512 U.S. 477; *see Peralta v. Vasquez*, 467 F.3d 98, 102-04 (2d Cir. 2006). As this Court has explained, "it is the substance of the petition, rather than its form, that determines" whether it has been properly filed as a habeas petition. *James v. Walsh*, 308 F.3d

162, 166 (2d Cir. 2002). Similarly, a filing labelled a motion to vacate the denial of habeas relief should when appropriate be construed as a successive petition. *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005).

*Second*, to the extent that *Wilson* gives determinative weight to an inmate's prayer for release, that standard is unworkable. Permitting a litigant's request for release to dictate whether a cause of action sounds in habeas would make conditions-of-confinement claims cognizable under 28 U.S.C. § 2254, without limitation. As Justice Scalia observed of conditional writs of habeas corpus, those writs "are not an all-purpose weapon" for federal courts to use to ameliorate prison conditions. *Wilkinson*, 544 U.S. at 87 (Scalia, J., concurring). And as the Court explained in *Preiser*, it would "wholly frustrate congressional intent" to allow petitioners to evade legal requirements "by the simple expedient of putting a different label on their pleadings." 411 U.S. at 489-90.

*Third*, the Sixth Circuit's approach is inconsistent with the decision of Congress, in the PLRA, to address and limit the ability of federal courts to order release from state prisons. As discussed above (at pp. 41-42), the PLRA makes release available as a remedy for unconstitutional prison conditions only as a last resort—after other measures have failed, and a

three-judge court has determined by clear and convincing evidence that no other remedy will work. *See* 18 U.S.C. § 3626(a)(3). The Sixth Circuit's approach in *Wilson* would allow inmates to bypass those procedures by claiming at the outset that only release can suffice.

*Finally*, the Sixth Circuit's ruling in *Wilson* is inconsistent with this Court's decision in *Fielding*. Like the petitioner here, Fielding argued that his medical vulnerability made the very fact of imprisonment cruel and unusual, and that he was entitled to seek release via habeas. This Court disagreed, and concluded that Fielding's remedy lay in a civil rights lawsuit, not in habeas.

The same points can be made with respect to the Third Circuit's decision in *Hope*. Although the Third Circuit held that federal immigration detainees could proceed under 28 U.S.C. § 2241, that case did not involve sentenced state prisoners, the court cautioned that it was "not creating a garden variety cause of action," and emphasized that such a remedy would be available "*only in extreme cases.*" 972 F.3d at 324 (emphasis by the court). Accordingly, most district courts in the Third

Circuit have not applied *Hope* to permit sentenced state prisoners to bring habeas challenges to prison conditions during the pandemic.[12]

### 3. Petitioner Has Not Pleaded a Cognizable Habeas Claim under the Cited Decisions.

In any event, petitioner has not satisfied the pleading requirements set forth in *Wilson*. That decision allowed inmates in the medically vulnerable subclass to proceed via habeas corpus because they had alleged that no conditions short of release would cure the constitutional violation. The subclass contended that there were "no mitigation efforts" that the federal prison could undertake in order to "prevent the risk of contraction—and possible later spread to the non-prison community—to any acceptable degree, other than immediate release." *Wilson*, 961 F.3d at 837. Petitioner's allegations here do not meet this standard.

---

[12] *See, e.g., Moss v. Harper*, Civil Action No. 2:22-cv-290, 2022 U.S. Dist. LEXIS 85789, at *3-6 (W.D. Pa. Apr. 19, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 85744 (W.D. Pa. May 12, 2022); *Andrews v. Akinbayo*, No. CV 21-886-CFC, 2022 WL 670942, at *1 (D. Del. Mar. 7, 2022); *but see Gibson v. Bros.*, No. CV 22-953, 2023 WL 8882337, at *2-4 (E.D. Pa. Dec. 6, 2023), *report and recommendation adopted sub nom. Gibson v. Mark Bros.*, 2023 WL 8879766 (E.D. Pa. Dec. 22, 2023) (observing that Third Circuit had not extended *Hope* to sentenced state prisoners, but assuming that it may do so in the context of a COVID claim).

Although petitioner here seeks release as his remedy and asserts that COVID-19 cannot be contained at Sullivan CF, his petition also describes at great length the many things that, in his view, the prison authorities could be doing, short of release, that would ameliorate the purported constitutional violation. Thus, petitioner alleges that Sullivan CF officials failed to adhere to best practices for reducing COVID-19 transmission, such as by issuing adequate personal protective equipment like gloves and masks to inmates (Pet. at 3-6, 10-12, 15); enforcing social distancing (Pet. 4, 10-12); properly sanitizing common areas (Pet. 4-5, 10-12); insuring adequate ventilation (Pet. 12); conducting widespread testing (Pet. 15); and generally following CDC guidelines for preventing the spread of COVID (Pet. 5). Even if all those allegations were proved, the court could order prison officials to implement or improve their practices in these respects, which could well cure any constitutional violation.

Moreover, circumstances have changed greatly since 2020 when petitioner filed his petition, and the court could take those changed circumstances into account in fashioning relief. For example, while there is still no cure for COVID-19, highly effective vaccines have been

available to New York State inmates for years, petitioner himself has been vaccinated twice, there are now effective treatments to address COVID infections and effective medications to prevent a COVID infection from becoming more serious. (*See* Declaration of Megan Yaiser, Dkt. 78-3, ¶¶ 3, 4, 7, 11.) Indeed, *Wilson* noted that the medically vulnerable petitioners were dependent on prison officials' adherence to "preventative measures to decrease transmission" because, at that time, there was "no current vaccine." *Wilson*, 961 F.3d at 833. That is not the case now.

### 4. The Contrary District Court Decisions in This Circuit Are Unpersuasive.

Finally, petitioner points out that several district courts in this Circuit have held that similar COVID claims are cognizable in habeas. (Br. 14-16.) These decisions are not persuasive, however, for all the reasons set out above.

For example, petitioner quotes at length from the district court's decision in *Holloway v. Wolcott*, No. 20 Civ. 6329 (FPG), 2020 WL 3172772 (W.D.N.Y. June 15, 2020) (*see* Br. 15-16), but his quotations are either taken out of context or reflect analytical errors. Thus, petitioner quotes the *Holloway* court as saying that in *Cook v. New York State*

*Division of Parole*, 321 F.3d at 278, this Court held that a state prisoner "must" bring a challenge to the execution of his sentence under Section 2254. (Br. 15). But this statement is taken out of context: in fact, *Cook* related to the revocation of parole – an issue as to which there is no question that habeas relief is appropriate – and this Court was merely saying that a state prisoner "must" file a habeas petition under Section 2254 rather than a petition under Section 2241. Similarly, petitioner's quotations make clear that *Holloway* erroneously relied on this Court's rulings that a *federal* prisoner can raise a conditions-of- confinement claim under Section 2241, without recognizing that this principle has no proper application to the scope of habeas relief under Section 2254.

In contrast, both the Magistrate Judge and District Court here relied on Judge McMahon's decision in *Acevedo v. Capra*, 545 F. Supp. 3d 107, 114-18 (S.D.N.Y. 2021), which held that an action complaining about the health risks of COVID to prisoners could only be brought under 42 U.S.C. § 1983. *See* A. 13-14 (report and recommendation), A. 23 (district court decision). The district court's decision in *Acevedo* is the only result consistent with *Fielding*, governing Supreme Court decisions and congressional intent, and should be followed here.

# CONCLUSION

For the reasons stated above, the District Court's should be vacated

with instructions to dismiss the petition as moot, or should be affirmed.

Dated:   New York, New York
         November 25, 2024

                                        Respectfully submitted,

                                        LETITIA JAMES
                                          *Attorney General*
                                          *State of New York*
                                        Attorney for Respondent


                              By:   */s/ Michelle Maerov*
                                    MICHELLE MAEROV
                                    Sr. Assistant Attorney General

BARBARA D. UNDERWOOD                    28 Liberty Street
  *Solicitor General*                   New York, NY 10005
IRA M. FEINBERG                         (212) 416-6242
  *Deputy Solicitor General*
  *for Criminal Matters*
MICHELLE MAEROV
  *Senior Assistant Attorney*
*General*
        *of Counsel*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Michelle Maerov, an Assistant Attorney General in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 12,967 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

Dated: November 25, 2024

*s/ Michelle Maerov*
MICHELLE MAEROV
Senior Assistant Attorney General
*Counsel for Appellant*
Office of the Attorney General
28 Liberty Street, 14th Floor
New York, NY 10005
Michelle.Maerov@ag.ny.gov
(212) 416-6242